Gregory D. Miller
Nancy A. Del Pizzo
**RIVKIN RADLER LLP**
21 Main Street, Suite 158
Court Plaza South –West Wing
Hackensack, New Jersey 07601
Telephone:  201-287-2460
Facsimile: 201-489-0495

OF COUNSEL:
Chidambaram S. Iyer (*pro hac vice* application forthcoming)
**SUGHRUE MION, PLLC**
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: 202-775-7542
Facsimile: 202-293-7860

*Attorneys for Plaintiffs Arjuna Natural Ltd.*
*and Arjuna Natural LLC, USA*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARJUNA NATURAL LTD. and ARJUNA NATURAL LLC, USA, <br><br> Plaintiffs, <br><br> v. <br><br> DOLCAS BIOTECH, LLC, DOLPHIN INTERNATIONAL LTD., ORCAS NATURALS, LLC, UNIQUE ENCAPSULATION TECHNOLOGY, LLC, DESIGN BY NATURE, LLC, and K. GNANESHWAR RAO, <br><br> Defendants. | Civil Action No.: <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff, Arjuna Natural Ltd. (hereinafter "ANE"), with an address at Bank Road, Periyar

Nagar, Aluva, Kerala 683101 (formerly known as Arjuna Natural Extracts), India, and Arjuna

1

Natural LLC, USA ("together Arjuna"), with an address at  600 E John Carpenter Freeway STE 380, Irving, TX 75062 USA(together, "Plaintiffs"), by and through its undersigned attorneys, for its Complaint against defendants, DolCas Biotech, LLC (hereinafter "DBT"), with an address at 9 Lenel Road, Landing, New Jersey 07850, Dolphin International Ltd. (hereinafter "Dolphin International") with an address at B-210, Okhla Industrial Area, Phase-1, New Delhi 110020, India, and K. Gnaneshwar Rao ("K.G. Rao"), Orcas Naturals, LLC., with an address at 9 Lenel Road, Landing, New Jersey 07850, Unique Encapsulation Technology, LLC, with an address at 9 Lenel Road, Landing, New Jersey 07850, Design By Nature, LLC, with an address at 9 Lenel Road, Landing, New Jersey 07850 (collectively with DBT, the "DolCas Defendants"), with an address at 9 Lenel Road, Landing, New Jersey 07850 (collectively with DBT, DolCas Defendants, and Dolphin International, the "Defendants"), alleges as follows:

## NATURE OF ACTION

1.      This is an action for false advertising, unfair competition, breach of contract and other relief arising under federal and state laws as a result of DBT's manufacturing, distributing, selling, advertising and/or marketing a counterfeit and/or infringing turmeric herbal dietary supplements and breach of the Supply and Distribution Agreement ("Agreement") between DBT and Plaintiffs.  The DolCas Defendants have also misrepresented that the turmeric-based ingredients supplied by third parties, including Dolphin International is Plaintiffs' turmeric extract formula.  Additionally, this is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 100, *et seq*., arising out of the Defendants' manufacturing and selling a turmeric herbal dietary supplement using Plaintiffs' patented composition and process, and upon information and belief, infringing one or more of Plaintiffs' United States Patents Nos. 7,736,679 (the "'679 patent"), 7,883,728 (the "'728 patent"), 8,153,172 (the "'172 patent"),

8,197,869 (the "'869 patent"), 8,329,233 (the "'233 patent"), 8,895,087 (the "'087 patent"), 8,993,013 (the "'013 patent"), 7,879,373 (the "'373 patent"), 8,623,431 (the "'431 patent") all owned by Plaintiffs (collectively, "the patents-in-suit").

## THE PARTIES

2.      Plaintiff, ANE is a public limited company duly organized and existing under the laws of India, with an address at Bank Road, Periyar Nagar, Aluva, Kerala 683101.

3.      Plaintiff, Arjuna, is a limited liability company duly organized under the laws of Texas with an address at 3102 Maple Avenue, Suite 400, Dallas, Texas 75201.

4.      Upon information and belief, defendant, DBT, is a limited liability company organized and existing under the laws of the State of New Jersey, with an address at 9 Lenel Road, Landing, New Jersey 07850.

5.      Upon information and belief, defendant, Dolphin International, is a private limited company duly organized and existing under the laws of India, with offices and principal place of business located at B-210, Okhla Industrial Area, Phase-1, New Delhi 110020, India.

6.      Upon information and belief, defendant, K. Gnaneshwar Rao, is a natural person who resides in and is a citizen of New Jersey.  K. Gnaneshwar Rao is a managing member of DBT.

7.      Upon information and belief, defendant Orcas Naturals, LLC, is a limited liability company organized and existing under the laws of the State of New Jersey, with offices and a principal place of business located at 9 Lenel Road, Landing, New Jersey 07850.

8.      Upon information and belief, defendant Unique Encapsulation Technology, LLC, is a limited liability company organized and existing under the laws of the State of New Jersey,

with offices and a principal place of business located at 9 Lenel Road, Landing, New Jersey 07850.

9.     Upon information and belief, defendant Design by Nature, LLC, is a limited liability company organized and existing under the laws of the State of New Jersey, with offices and a principal place of business located at 9 Lenel Road, Landing, New Jersey 07850.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 35 U.S.C. § 271 because this is a case for patent infringement.  Subject matter jurisdiction is also proper because of claims arising under other federal statutes, including the Lanham Act, 15 U.S.C. § 1125 and 28 U.S.C. § 1331.  This Court also has supplemental jurisdiction to Plaintiffs' claims arising under the laws of the State of New Jersey because they share a common nucleus of operative fact with the federal law claims, pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

11.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this matter involves a controversy in excess of $75,000.00, exclusive of interests and costs, between corporations and citizens of different states.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiffs' claims arise in this judicial district, each party does business in this judicial district, witnesses and evidence are located within this judicial district, and some of the acts alleged herein have taken place in this judicial district.

## ARJUNA'S PRODUCT AND THE PATENTS-IN-SUIT

13.     Plaintiffs develop and manufacture a pure turmeric herbal dietary supplement composed of a curcuminoid mixture and essential oil from turmeric (also referred to as Turmeric Oleoresins and/or Turmeric Extract/Bio-Curcumin/BCM-95/Bio-Curcumax/derivatives of BCM-

95) (hereinafter the "Product").  The Product has a significantly higher level of bioavailability of curcumin as compared to natural and/or commercially available curcumin products.

14.     On June 15, 2010, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued the '679 patent, entitled "Composition to enhance the bioavailability of curcumin" to Plaintiffs as assignee of inventor Benny Antony.  A copy of the '679 patent is attached hereto as Exhibit A.

15.     On February 8, 2011, the USPTO duly and lawfully issued the '728 patent, entitled "Composition to enhance the bioavailability of curcumin" to Plaintiffs as assignee of inventor Benny Antony.  A copy of the '728 patent is attached hereto as Exhibit B.

16.     On April 10, 2012, the USPTO duly and lawfully issued the '172 patent, entitled "Composition to enhance the bioavailability of curcumin" to Plaintiffs as assignee of inventor Benny Antony.  A copy of the '172 patent is attached hereto as Exhibit C.

17.     On June 12, 2012, the USPTO duly and lawfully issued the '869 patent, entitled "Composition to enhance the bioavailability of curcumin" to Plaintiffs as assignee of inventor Benny Antony.  A copy of the '869 patent is attached hereto as Exhibit D.

18.     On December 11, 2012, the USPTO duly and lawfully issued the '233 patent, entitled "Composition to enhance the bioavailability of curcumin" to Plaintiffs as assignee of inventor Benny Antony.  A copy of the '233 patent is attached hereto as Exhibit E.

19.     On November 25, 2014, the USPTO duly and lawfully issued the '087 patent, entitled "Composition to enhance the bioavailability of curcumin" to Plaintiffs as assignee of inventor Benny Antony.  A copy of the '087 patent is attached hereto as Exhibit F.

20.     On March 31, 2015, the USPTO duly and lawfully issued the '013 patent, entitled "Composition to enhance the bioavailability of curcumin" to Plaintiffs as assignee of inventor Benny Antony.  A copy of the '013 patent is attached hereto as Exhibit G.

21.     On February 1, 2011, the USPTO duly and lawfully issued the '373 patent, entitled "Composition to enhance the bioavailability of curcumin" to Plaintiffs as assignee of inventor Benny Antony.  A copy of the '373 patent is attached hereto as Exhibit H.

22.     On January 7, 2014, the USPTO duly and lawfully issued the '431 patent, entitled "Composition to enhance the bioavailability of curcumin" to Plaintiffs as assignee of inventor Benny Antony.  A copy of the '431 patent is attached hereto as Exhibit I.

## THE SUPPLY AND DISTRIBUTION AGREEMENT

23.     On or about July 19, 2010, Plaintiffs and DBT entered into the Agreement.  A significant and material term of the Agreement is that Plaintiffs are to be the exclusive manufacturer and supplier of the Product to DBT.  Specifically, Paragraph 2C of the Agreement provides: "Exclusive Source of Purchase. DBT or its affiliates should buy the Products from Plaintiff or its affiliates only and should not buy from any other source during the term of this letter agreement . . . ."

24.     In consideration of the above right to exclusively supply DBT, Plaintiffs granted DBT the exclusive right to sell, market, and distribute the Product.  Specifically, Paragraph 2A of the Agreement provides: "Exclusive Right to Sell, Market, and Distribute; Certain Obligations.  Plaintiffs grant to DBT (and DBT accepts such grant) the exclusive right to sell, market, deliver, and otherwise distribute the Products in the Territory . . . ."

25.     Under the Agreement, DBT was to sell the Product under the trademarks, BCM-95, BIO-CURCUMIN, and/or BIO-CURCUMAX, and/or derivatives of BCM-95, each of which are trademarks registered and owned by DBT (collectively, "BCM-95").

26.     Additionally, under Paragraph 7(c) of the Agreement, DBT disclaimed "any rights to Plaintiff's patents (and/or any root and/or derivative thereof) pursuant to which Plaintiffs manufacture the Products, and all such patents are and shall remain owned by Plaintiff."  A copy of the Agreement is attached hereto as Exhibit J.[1]

## DBT'S WRONGFUL CONDUCT

27.     Plaintiffs have fulfilled its obligations under the Agreement.

28.     On the other hand, DBT has violated the express terms of the Agreement by attempting to covertly manufacture, obtain from other manufacturers, import, sell, market and/or advertise BCM-95 with turmeric ingredients while representing it to the marketplace as the Product.   Upon information and belief, DBT entered into an agreement with Dolphin International, under which DBT has been purchasing turmeric ingredients manufactured by Dolphin International that it has then sold and marketed as BCM-95 containing the Product. Upon information and belief, Dolphin International is owned by K.V. Rao, the brother of defendant, K.G. Rao.

29.     Upon information and belief, one or more third parties have manufactured and supplied turmeric ingredients to DBT by either copying or reverse engineering Plaintiffs' formula for the Product, thereby infringing Plaintiffs' patents. However, the alleged turmeric herbal dietary supplement ("the counterfeit product") is of inferior quality.

---

[1] Exhibit J has been filed under seal due to the confidentiality provisions therein.

7

30.     For instance, analyses performed on BCM-95 that was sold to customers confirmed that the counterfeit product was not the Product.   Moreover, the Certificate of Analysis provided to the customer was a forged document with fake results.   This forged document also included a footnote falsely implying that ANE performed and approved of this analysis.   The analysis proved that what Defendants had been selling was a counterfeit turmeric herbal dietary supplement product of inferior quality.

31.     DBT failed to notify Plaintiffs, and concealed the fact that it has been manufacturing and selling counterfeit Products.   Rather than adhering to their contractual obligations, DBT falsely represented the counterfeit product as the Plaintiffs' Product. DBT additionally purchased counterfeit products from Dolphin International and other third parties, and sold the counterfeit products.  Plaintiffs discovered DBT's unlawful acts because on or about March 29, 2017, a customer of DBT emailed Plaintiffs expressing concern about unusual test results obtained for BCM-95.   Plaintiffs obtained and tested samples from the customer, which confirmed that the BCM-95 being sold by DBT was not the Product, but rather, a completely different turmeric product of inferior quality.

32.     Further, DBT has been selling the counterfeit Product while continuing to use Plaintiffs' Certificate of Analysis for the Product, which is included with shipments of BCM-95 mailed to customers.  By virtue of the fact that the Certificates of Analysis pertain to Plaintiffs' Product and not the counterfeit Product, they contained erroneous and fraudulent information regarding ingredients sold under the BCM-95 mark.  Upon information and belief, the DolCas Defendants engaged in such fraudulent conduct on a continuous basis for several years.

33.     Upon discovering these violations, Plaintiffs requested that drums of the Product supplied by Plaintiffs to DBT be labeled with Plaintiffs' patent information and identify

Plaintiffs as the supplier to ensure that when DBT sells BCM-95, customers will be able to confirm that it contains the Product.  DBT refused.

34.     In March of 2017, Plaintiffs realized that DBT had purchased significantly less Product from Plaintiffs during the time frame of November 2016 to March 2017 as compared with similar time periods in the previous year.  The reduction in purchase from Plaintiffs is clearly because DBT had been violating the exclusivity provision of the Agreement.

35.     Additionally, Plaintiffs and DBT have received complaints from customers regarding the quality of lots of BCM-95 being sold by DBT using the counterfeit Product because of inferior quality and not meeting the specifications of the Product.  The Product and Plaintiffs' patented process are well known in the industry and recognized for its bioavailability and the pureness of its turmeric herbal dietary supplement.  Plaintiffs are also well known in the industry as the exclusive manufacturer and supplier of BCM-95.  Because wholesalers and end consumers still believe that the counterfeit products being sold by DBT as BCM-95 is the Product supplied by Plaintiffs, DBT's acts have caused and will continue to cause irreparable harm to Plaintiffs' good will and reputation.

36.     As with any novel product, Plaintiffs have expended a vast amount of resources in R&D and clinical studies of the Product sold under the trademark BCM-95.  Furthermore, Plaintiffs have gone to great lengths to protect its investment, as evidenced by its numerous patents.  Plaintiffs' expenditures resulted in significant customer good will behind the trademark BCM-95.  In contrast, DBT is now attempting to bypass the efforts required to develop such a product by fraudulently misrepresenting and selling its inferior product as the Product.

## COUNT ONE

### (Against DBT -- False Advertising and Unfair Competition
### Under § 43(a) The Lanham Act, 15 U.S.C. § 1125(a))

37.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

DBT has made and distributed in interstate commerce and in this District, advertisements that contain false or misleading statements of fact regarding its products.  These advertisements contain actual misstatements and/or misleading statements, including, among others, that: (i) Plaintiffs are the supplier of the BCM-95 being sold by DBT, when DBT is actually selling inferior turmeric herbal dietary supplement supplied by Defendants and/or other third parties; and (ii) certifying that the counterfeit products being sold by DBT meet the Product's specifications.

38.    Upon information and belief, these false statements actually deceive, or have a tendency to deceive, a substantial segment of potential customers.  This deception is material in that it is likely to influence the purchasing decisions related to Plaintiffs' Product.

DBT's false and misleading advertising statements and omissions injure wholesalers, consumers, and Plaintiffs.

39.    DBT's false and misleading advertising statements and omissions violate the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

40.    DBT has caused, and will continue to cause, immediate and irreparable injury to Plaintiffs, including injury to their business, reputation, and goodwill, for which there is no adequate remedy at law.  As such, Plaintiffs are entitled to an injunction under 15 U.S.C. § 1116 restraining DBT, its agents, employees, representatives and all persons acting in concert with

them from engaging in further acts of false advertising, and ordering removal of all of DBT's false and misleading statements.

41.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover from DBT the damages sustained by Plaintiffs as a result of DBT's acts in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

42.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover from DBT the gains, profits and advantages that it has obtained as a result of its acts.

43.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover the costs of this action.   And, upon information and belief, DBT's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Plaintiffs to recover additional damages and reasonable attorneys' fees.

## COUNT TWO

### Against DBT
### (Unfair Competition Under N.J.S.A. § 56:4-1)

44.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

45.    DBT has made, published, disseminated and circulated false, deceptive and misleading statements, representations and advertisements in New Jersey misrepresenting the nature, quality, and characteristics of its counterfeit product with the intent of selling, distributing and increasing the consumption of, and interest in products marketed as BCM-95.

46.    DBT's conduct, including but not limited to, its false representation that Plaintiffs are the supplier of the counterfeit product that is actually manufactured by Defendants and other third parties, and that said counterfeit product being sold by DBT is Plaintiffs' Product and meets the Product specifications with respect to its ingredients constitutes statutory unfair competition

11

in that such acts have appropriated the reputation or goodwill Plaintiffs have established in their patented Product.

47.     As a direct and proximate result of DBT's wrongful conduct, Plaintiffs have suffered and will continue to suffer injury, which includes loss of customers, dilution of goodwill, confusion of existing and potential customers and diminution of the value of Plaintiffs' Product.

48.     The harm from DBT's wrongful acts is imminent and irreparable, and the amount of damage sustained by Plaintiffs will be difficult to ascertain if these acts continue.  Plaintiffs have no adequate remedy at law.

49.     Plaintiffs are entitled to an injunction restraining Defendants, its officers, agents, employees and all persons acting in concert with DBT from engaging in further such unlawful conduct.

50.     Plaintiffs are entitled to damages, directly or indirectly caused by DBT's acts, including treble damages.

## COUNT THREE

### (Against DBT – Common Law Unfair Competition)

51.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

52.     DBT has made, published, disseminated and circulated false, deceptive and misleading statements, representations and advertisements in New Jersey misrepresenting the nature, quality, and characteristics of its counterfeit product with the intent of selling, distributing and increasing the consumption of, and interest in products marketed as BCM-95.

53.     DBT's conduct, including but not limited to, its false representation that Plaintiffs are the exclusive manufacturer and supplier of the BCM-95 that are actually manufactured by Defendants and third parties, and that said BCM-95 being sold by DBT is Plaintiffs' Product and meets the Products specifications with respect to its ingredients constitutes unfair competition under the common law of New Jersey in that such acts have appropriated the reputation or goodwill Plaintiffs have established in their Product.

54.     As a direct and proximate result of DBT's wrongful conduct, Plaintiffs have suffered and will continue to suffer injury, which includes loss of customers, dilution of goodwill, confusion of existing and potential customers and diminution of the value of Plaintiffs' Product.

55.     The harm from DBT's wrongful acts is imminent and irreparable, and the amount of damage sustained by Plaintiffs will be difficult to ascertain if these acts continue.  Plaintiffs have no adequate remedy at law.

56.     Plaintiffs are entitled to an injunction restraining DBT, its officers, agents, employees and all persons acting in concert with DBT from engaging in further such unlawful conduct.

57.     Plaintiffs are entitled to damages, directly or indirectly caused by DBT's acts, including treble damages.

## COUNT FOUR

### (Against DBT -- Trade Libel)

58.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

59.     DBT knowingly and recklessly disseminated false and disparaging statements and allegations about Plaintiffs' Product to third parties, including but not limited to, the false statements that that Plaintiffs are the exclusive manufacturer and supplier of the counterfeit product that are manufactured by Defendants and other third parties, and that said counterfeit product being sold by DBT is Plaintiffs' Product and meets the Product's specifications. DBT made these false and disparaging statements knowing that the counterfeit product it was selling was actually manufactured and supplied by Defendants and third parties, and that it did not meet the Product's specifications.

60.     Upon information and belief, these false and fraudulent statements were made by DBT in its advertising and marketing of its counterfeit products, and each time it sold counterfeit products manufactured and supplied by Defendants and third parties to wholesalers and consumers and included a Certificate of Analysis for the Product.

61.     DBT's false and disparaging statements to third parties played a material part in causing a loss of customers and harming Plaintiffs' good will and business reputation.

62.     As a direct and proximate result of the trade libel of DBT, Plaintiffs have incurred and will continue to suffer damages.

## COUNT FIVE

### (Against the Defendants DBT and K.G. Rao -- Common Law Fraud)

63.     Plaintiffs repeat each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

64.     The foregoing fraudulent scheme was intended to and did accomplish its end. Plaintiffs relied on the representations made by the Defendants DBT and K.G. Rao in good faith and without knowledge of their falsity.

14

65.     The Defendants DBT and K.G. Rao directly and indirectly, individually or in concert, engaged in acts, practices and courses of dealing that constitute common law fraud in fact and fraud in the inducement.

66.     The Defendants DBT and K.G. Rao made misrepresentations to Plaintiffs that were false as to the nature of the products being purchased and sold. The Defendants DBT and K.G. Rao made false representations as to the income generated from sales of Plaintiffs' product as well as projections based on false information. These false representations were knowingly made to Plaintiffs to induce them to continue providing DBT with its patent-protected products and Certificates of Analysis related to the Product.

67.     These falsehoods were material as they were the key inducement that created appeal for Plaintiffs to do business with the Defendants DBT and K.G. Rao.  The Defendants DBT and K.G. Rao knew of the falsity of the representations and ignored the truth or should have known that they were falsehoods or knew or should have known that they made the false representations to the Plaintiffs.

68.     The Defendants DBT and K.G. Rao intended that the Plaintiffs act on these falsehoods and continue to supply product and Certificates of Analysis to the Defendants DBT and K.G. Rao in reliance thereon.  The Defendants DBT and K.G. Rao knew or should have known that the Plaintiffs was ignorant of the truth because the Defendants DBT and K.G. Rao engaged in a pattern of deception.

69.     The false representations were knowingly made by the use of verbal representations by defendant, DBT, and K.G. Rao, the Managing Member of DBT, as well as officers and employees of the Defendants, through mailings and telephone calls in such a way that the Plaintiffs had good reason to rely on the misleading representations.

70.     As a result of the foregoing, Plaintiffs have been damaged for which it is entitled to and demands compensatory damages, treble damages, punitive damages and attorney's fees.

## COUNT SIX

### (Against DBT -- Breach of Contract)

71.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

72.     The Agreement is a valid and binding contract between Plaintiffs and DBT.

73.     Paragraph 2C of the Agreement provides: "Exclusive Source of Purchase. DBT or its affiliates should buy the Products from Plaintiff or its affiliates only and should not buy from any other source during the term of this letter agreement . . . ."

74.     Plaintiffs have substantially and materially performed under the Agreement.

75.     DBT has breached the Agreement by manufacturing and selling counterfeit products sourced from Defendants or third parties.

76.     As a direct and proximate result of DBT's breach, Plaintiffs have suffered and will continue to suffer damages and irreparable harm.

77.     Accordingly, by virtue of the foregoing, Plaintiffs are entitled to actual, compensatory and consequential damages, together with interest and costs, and any other relief the Court deems just and proper.

## COUNT SEVEN

### (Against DBT -- Breach of Implied Covenant of Good Faith and Fair Dealing)

78.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

16

79.     By virtue of the Agreement, including the exclusivity provision under Paragraph 2C, Plaintiffs had a reasonable, justifiable, and rightful expectation that DBT would perform its obligations under the Agreement in an ethical, professional, and competent manner.

80.     Nonetheless, DBT knowingly failed to perform its obligations by manufacturing, purchasing and selling counterfeit products instead of Plaintiffs' Product, and by misrepresenting and concealing that the counterfeit product was Plaintiffs' Product.

81.     As such, DBT failed to use reasonable, good faith efforts fulfill its obligations under the Agreement and to sell, market, and advertise the Plaintiffs' Product.

82.     Thus, in addition to breaching the express terms of the Agreement, DBT has frustrated the purpose of the Agreement by intentionally and deliberately acted and proceeded in bad faith and has breached its duty of good faith and fair dealing owed to Plaintiffs.

83.     As a direct and proximate result of DBT's breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered and will continue to suffer damages and irreparable harm.

84.     Accordingly, and by virtue of the foregoing, Plaintiffs are entitled to actual, compensatory and consequential damages, together with interest and costs, and any other relief the Court deems just and proper.

## COUNT EIGHT

### (Against Defendants -- Unjust Enrichment)

85.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

86.     As set forth above, Defendants have engaged in improper and/or unjust acts, all to the harm and detriment of Plaintiffs.

87.     Specifically, DBT has used, sold, offfered for sale, manufactured, and/or purchased counterfeit products from Defendants and other third parties, while falsely representing that the counterfeit products being sold is the Plaintiffs' Product.

88.     By doing so, Defendants have been enriched at Plaintiffs' expense, and have unjustly benefited from the reputation of Plaintiffs' Product, patented composition and process and good will.

89.     The retention by Defendants of profits made by selling counterfeit products not supplied by Plaintiffs violates fundamental principles of justice, equity and good conscience.

By reason of the foregoing, Defendants have been unjustly enriched in an amount to be determined at trial.

## COUNT NINE

**(Against Dolphin International -- Tortious Interference with Contract)**

90.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

91.     The Agreement is a valid and binding contract between Plaintiffs and DBT.

Upon information and belief, Dolphin International had knowledge of the Agreement between Plaintiffs and DBT.  Additionally, it is well known in the industry and well documented that Plaintiffs is the exclusive manufacturer and supplier of the Product sold by DBT as BCM-95.

92.     Nonetheless, upon information and belief, Dolphin International intentionally interfered with the Agreement by entering into an agreement with DBT to supply turmeric ingredients to be used in counterfeit products and supplying the same to DBT.

93.     Dolphin International's interference with the Agreement was without justification.

94.     As a result of Dolphin International's interference with the Agreement, Plaintiffs have suffered and will continue to suffer damages, including the loss of sales of the Product to DBT, loss of customers, and harming Plaintiffs' good will and business reputation.

## COUNT TEN

**(Against K. G. Rao and Dolphin International – Violation of RICO, 18 U.S.C. § 1962(c))**

95.     Plaintiffs repeat each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

96.     DBT is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engage in activities that affect interstate commerce.

97.     Defendants, K.G. Rao and Dolphin International have knowingly conducted and/or participated, directly or indirectly, in the conduct of DBT's affairs through a pattern of racketeering activity consisting of repeated violations of (a) the Federal mail fraud statute, 18 U.S.C. § 1341 based on the use of United States mail and (b) the federal wire fraud statute, 18 U.S.C. § 1343 based on the use telephone and electronic communications and did cause to be mailed or transmitted telephonically or through electronic means Certificates of Analysis that contained erroneous and fraudulent information regarding ingredients sold under the BCM-95 trademark on a continuous basis for several years.  The fraudulent reports and statements and corresponding mailings and transmissions submitted to or from the Defendants that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint.

98.     The Defendants' business is a racketeering activity, inasmuch as the enterprise exists for the purpose of submitting Certificates of Analysis that contained erroneous and fraudulent information regarding ingredients sold under the BCM-95 trademark.  The predicate acts of mail fraud and wire fraud are the regular way in which Defendants, K.G. Rao and

Dolphin International have operated DBT, inasmuch as DBT is not engaged in a legitimate practice, and the acts of mail fraud and wire fraud therefor are essential for DBT to function. Further, the intricate planning required to carry out and conceal the predicate acts of mail and wire fraud implies a threat of continued criminal activity.

99.     The Defendants are engaged in inherently unlawful acts, inasmuch as they have and continue to conceal the predicate acts of mail and wire fraud.  These inherently unlawful acts are taken by the Defendants in pursuit of inherently unlawful goals – namely, the theft of money due Plaintiffs, patent infringement, and selling counterfeit product damaging to Plaintiffs' good will.

100.    The Defendants are engaged in inherently unlawful acts, inasmuch as they have and continue to conceal their predicate acts.  These inherently unlawful acts are taken by the Defendants in pursuit of inherently unlawful goals – namely, the theft of money due Plaintiffs, patent infringement, and selling counterfeit product damaging to Plaintiffs' good will.

## COUNT ELEVEN

**(Against K.G. Rao and Dolphin International -- Violation of N.J. RICO, N.J.S.A. 2C:41)**

101.    Plaintiffs repeat each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

102.    DBT is an ongoing "enterprise," as that term is defined in N.J.S.A. 2C:41-1c that affected trade or commerce.

103.    Defendants, K.G. Rao and Dolphin International have knowingly conducted and/or participated, directly or indirectly, in the conduct of DBT's affairs through a pattern of racketeering activity consisting of repeated violations of (a) the federal mail fraud statute, 18 U.S.C. § 1341 based on the use of United States mail and (b) the federal wire fraud statute, 18

U.S.C. § 1343, theft and all crimes defined in chapter 20 of Title 2C of the New Jersey Statutes; and forgery and fraudulent practices and all crimes defined in chapter 21 of Title 2C of the New Jersey Statutes based on the Certificates of Analysis that contained erroneous and fraudulent information regarding ingredients sold under the BCM-95 trademark on a continuous basis for several years.  Further, the intricate planning required to carry out and conceal the predicate acts of mail and wire fraud implies a threat of continued criminal activity.

104.    The Defendants are engaged in inherently unlawful acts, inasmuch as they continue to conceal the predicate acts stated above and forgery and fraudulent practices and all crimes defined in chapter 21 of Title 2C of the New Jersey Statutes.  These inherently unlawful acts are taken by the Defendants in pursuit of inherently unlawful goals – namely, the theft of money due Plaintiffs, patent infringement, and selling counterfeit product damaging to Plaintiffs' good will.

## COUNT TWELVE

### (Against Defendants -- Aiding and Abetting)

105.    Plaintiffs repeat each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

106.    The acts and conduct of the Defendants as alleged herein substantially assisted and encouraged and induced and recklessly participated and endorsed and concealed the Defendants' fraud against Plaintiffs.

107.    As a direct and proximate result of the acts and conducts of the Defendants as alleged herein, Plaintiffs suffered damages.

108.    By reason of the foregoing, Defendants are liable to Plaintiffs for aiding and abetting the Defendants' fraud against Plaintiffs by the Defendants.  Plaintiffs seek against the

Defendant on this cause of action, restitution, monetary damages, consequential damages, compensatory damages, treble damages, punitive damages and attorney's fees.

## COUNT THIRTEEN

**(Against DBT and Dolphin International -- Infringement of the ʼ679 Patent)**

109.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

110.     Defendant Dolcas has infringed one or more claims of the ʼ679 Patent in violation of 35 U.S.C. § 271(a) by importing, making, using, selling, and/or offering for sale, products embodying the invention claimed in the ʼ679 Patent, including (but not limited to) the counterfeit products..

111.     Defendants' sale of counterfeit product that were not purchased under the Plaintiffs' contract meet the limitations of the claims of the ʼ679 patent.

By asserting and causing to assert that the ʼ679 patent covered the products sold under the trademark BCM-95, the Defendant has admitted that the counterfeit Products infringe the '679 patent.

112.     The counterfeit products that were sold were outside the scope of the contract and the infringing actions of Defendants are and have at all times been without the consent of, authority of, or license from Plaintiffs.

113.     As a direct and proximate result of the infringement of the ʼ679 Patent by Defendants, Plaintiffs have suffered damages in an amount yet to be fully ascertained, which will be proven at trial.

114.     By asserting and causing to assert that the ʼ679 patent covered the products sold under the trademark BCM-95, the Defendants have admitted to having knowledge of the

infringement of the '679 Patent, yet Defendants continued to infringe the '679 Patent.  The infringement of the '679 Patent by Defendant is knowing and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT FOURTEEN

### (Infringement of '728 Patent)

115.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

116.    Defendant Dolcas has infringed one or more claims of the '728 Patent in violation of 35 U.S.C. § 271(a) by importing, making, using, selling, and/or offering for sale, products embodying the invention claimed in the '728 Patent, including (but not limited to) the counterfeit products.  Defendants' sale of counterfeit products that were not purchased under the Plaintiffs' contract meet the limitations of the claims of the '728 patent.

117.    By asserting and causing to assert that the '728 patent covered the products sold under the trademark BCM-95, the Defendant has admitted that the counterfeit products infringe the '728 patent.

118.    The counterfeit products that were sold were outside the scope of the contract and the infringing actions of Defendant are and have at all times been without the consent of, authority of, or license from Plaintiffs.

119.    As a direct and proximate result of the infringement of the '728 Patent by Defendant, Plaintiffs have suffered damages in an amount yet to be fully ascertained, which will be proven at trial.

120.    By asserting and causing to assert that the '728 patent covered the products sold under the trademark BCM-95, the Defendant has admitted to having knowledge of the infringement of the '728 Patent, yet Defendant continued to infringe the '728 Patent.  The infringement of the '728 Patent by Defendant is knowing and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT FIFTEEN

### (Infringement of '172 Patent)

121.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

122.    Defendant Dolcas has infringed one or more claims of the '172 Patent in violation of 35 U.S.C. § 271(g) by importing, using  or, selling, and/or offering for sale, products that are made by a process claimed in the '172 Patent, including (but not limited to) the counterfeit products.

123.    Defendant's sale of counterfeit Products that were not purchased from the Plaintiffs contract were made using a process that meet the limitations of the claims of the '172 patent.

124.    The counterfeit Products that were sold were outside the scope of the contract and the infringing actions of Defendant are and have at all times been without the consent of, authority of, or license from Plaintiffs.

125.    As a direct and proximate result of the infringement of the '172 Patent by Defendant, Plaintiffs have suffered damages in an amount yet to be fully ascertained, which will be proven at trial.

126.    The infringement of the '172 Patent by Defendant is knowing and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT SIXTEEN

### (Infringement of '869 Patent)

127.    The allegations of paragraphs 1-24 are repeated and re-alleged as if set forth fully herein.

128.    Defendant Dolcas has infringed one or more claims of the '869 Patent in violation of 35 U.S.C. § 271(g) by importing, using  or, selling, and/or offering for sale, products that are made by a process claimed in the '869 Patent, including (but not limited to) the counterfeit products.  Defendant's sale of counterfeit Products that were not purchased under the Plaintiffs' contract were made using a process that meet the limitations of the claims of the '869 Patent.

129.    The counterfeit Products that were sold were outside the scope of the contract and the infringing actions of Defendant are and have at all times been without the consent of, authority of, or license from Plaintiffs.

130.    As a direct and proximate result of the infringement of the '869 Patent by Defendant, Plaintiffs have suffered damages in an amount yet to be fully ascertained, which will be proven at trial.

131.    The infringement of the '869 Patent by Defendant is knowing and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT SEVENTEEN

### (Infringement of '233 Patent)

132.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

133.    Defendant Dolcas has infringed one or more claims of the '233 Patent in violation of 35 U.S.C. § 271(g) by importing, using or, selling, and/or offering for sale, products that are made by a process claimed in the '233 Patent, including (but not limited to) the counterfeit

134.    Defendant's sale of counterfeit Products that were not purchased under the Plaintiffs' contract were made using a process that meet the limitations of the claims of the '233 Patent.

135.    The counterfeit Products that were sold were outside the scope of the contract and the infringing actions of Defendant are and have at all times been without the consent of, authority of, or license from Plaintiffs.

136.    As a direct and proximate result of the infringement of the '233 Patent by Defendant, Plaintiffs have suffered damages in an amount yet to be fully ascertained, which will be proven at trial.

137.    The infringement of the '233 Patent by Defendant is knowing and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT EIGHTEEN

### (Infringement of '087 Patent)

138.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

26

139.     Defendant Dolcas has infringed one or more claims of the '087 Patent in violation of 35 U.S.C. § 271(a) by importing, making, using, selling, and/or offering for sale, products embodying the invention claimed in the '087 Patent, including (but not limited to) the counterfeit Defendant's sale of counterfeit Products that were not purchased under the Plaintiffs' contract meet the limitations of the claims of the '087 patent.

140.     The counterfeit Products that were sold were outside the scope of the contract and the infringing actions of Defendant are and have at all times been without the consent of, authority of, or license from Plaintiffs.

141.     As a direct and proximate result of the infringement of the '087 Patent by Defendant, Plaintiffs have suffered damages in an amount yet to be fully ascertained, which will be proven at trial.

142.     The infringement of the '087 Patent by Defendant is knowing and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT NINETEEN

### (Infringement of '013 Patent)

143.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

144.     Defendant Dolcas has infringed one or more claims of the '013 Patent in violation of 35 U.S.C. § 271(a) by importing, making, using, selling, and/or offering for sale, products embodying the invention claimed in the '013 Patent, including (but not limited to) the counterfeit Defendant's sale of counterfeit Products that were not purchased under the Plaintiffs' contract meet the limitations of the claims of the '013 patent.

27

145.    The counterfeit Products that were sold were outside the scope of the contract and the infringing actions of Defendant are and have at all times been without the consent of, authority of, or license from Plaintiffs.

146.    As a direct and proximate result of the infringement of the '013 Patent by Defendant, Plaintiffs have suffered damages in an amount yet to be fully ascertained, which will be proven at trial.

147.    The infringement of the '013 Patent by Defendant is knowing and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## <u>COUNT TWENTY</u>

### (Infringement of '373 Patent)

148.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

149.    Defendant Dolcas has infringed one or more claims of the '373 Patent in violation of 35 U.S.C. § 271(g) by manufacturing, importing, using  or, selling, and/or offering for sale, products that are made by a process claimed in the '373 Patent, including (but not limited to) the counterfeit products.

150.    Defendant's sale of counterfeit Products that were not purchased from the Plaintiffs' contract were made using a process that meet the limitations of the claims of the '373 Patent.

151.    By asserting and causing to assert that the '373 patent covered the products sold under the trademark BCM-95, the Defendant has admitted that the counterfeit Products infringe the '373 patent.

152.    The counterfeit products that were sold were outside the scope of the contract and the infringing actions of Defendant are and have at all times been without the consent of, authority of, or license from Plaintiffs.

153.    As a direct and proximate result of the infringement of the '373 Patent by Defendant, Plaintiffs have suffered damages in an amount yet to be fully ascertained, which will be proven at trial.

154.    By asserting and causing to assert that the '373 patent covered the products sold under the trademark BCM95, the Defendant has admitted to having knowledge of the infringement of the '373 Patent, yet Defendant continued to infringe the '373 Patent. The infringement of the '373 Patent by Defendant is knowing and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT TWENTY-ONE

### (Infringement of '431 Patent)

155.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

156.    Defendant Dolcas has infringed one or more claims of the '431 Patent in violation of 35 U.S.C. § 271(a) by importing, making, using, selling, and/or offering for sale, products embodying the invention claimed in the '431 Patent, including (but not limited to) the counterfeit products. Defendant's sale of counterfeit products that were not purchased from the Plaintiffs' contract meet the limitations of the claims of the '431 patent.

157.    The counterfeit Products that were sold were outside the scope of the contract and the infringing actions of Defendant are and have at all times been without the consent of, authority of, or license from Plaintiffs.

158.    As a direct and proximate result of the infringement of the '431 Patent by Defendant, Plaintiffs have suffered damages in an amount yet to be fully ascertained, which will be proven at trial.

159.    The infringement of the '431 Patent by Defendant is knowing and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants as follows:

(a)    For temporary, preliminary and permanent injunctive relief prohibiting DBT, its agents, or anyone working for, in concert with or on behalf of DBT from engaging in false or misleading advertising with respect to its BCM-95 product and/or violating the Lanham Act § 43, which relief includes but is not limited to removal of all false or misleading advertisements and corrective advertising to remedy the effect of DBT's false advertising;

(b)    For an order requiring DBT to correct any erroneous impression persons may have derived concerning the source, nature, characteristics, or qualities of its BCM-95 product, including without limitation, the placement of corrective advertising and providing written notice to the public;

(c)    Awarding Plaintiffs actual, compensatory and consequential damages;

(d)    Awarding Plaintiffs punitive damages;

(e)     Awarding Plaintiffs treble damages and attorneys' fees under N.J.S.A. § 56:4-2 and 18 U.S.C. § 1962(c).

(f)     Awarding Plaintiffs treble damages and profits as a result of DBT's willful, intentional and deliberate acts pursuant to the Lanham Act, 15 U.S.C. § 1117 and the Patent Statute, 35 U.S.C. § 284.

(g)     Awarding Plaintiffs lost profits;

(h)     Awarding Plaintiffs profits obtained by Defendants as a consequence of their actions;

(i)     Enjoining DBT and Dolphin International from continuing its unlawful conduct, including but not limited to, enjoining DBT from advertising that the counterfeit product is the Product;

(j)     Ordering that DBT destroy all of its misleading and deceptive materials, including products with misleading and deceptive labels pursuant to 15 U.S.C. § 1118;

(k)     Awarding Plaintiffs their attorneys' fees, costs, and disbursements; and,

(l)     Granting Plaintiffs such other and further relief as the Court deems just and proper.

(m)     A declaration that the Agreement is null and void.


Dated:  July 23, 2018

**RIVKIN RADLER LLP**

By:     _s/ Gregory D. Miller_
        Gregory D. Miller
        Nancy A. Del Pizzo
        21 Main Street, Suite 158
        Court Plaza South –West Wing
        Hackensack, New Jersey 07601
        Telephone:  201-287-2460
        Facsimile: 201-489-0495

OF COUNSEL:
Chidambaram S. Iyer
(*pro hac vice* application forthcoming)
**SUGHRUE MION, PLLC**
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: 202-775-7542
Facsimile: 202-293-7860

*Attorneys for Plaintiffs Arjuna Natural Ltd.
and Arjuna Natural LLC, USA*

## JURY DEMAND

Plaintiffs hereby request a trial by jury of any issue so triable as of right pursuant to

Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: July 23, 2018

**RIVKIN RADLER LLP**

By:     *s/ Gregory D. Miller*
        Gregory D. Miller
        Nancy A. Del Pizzo
        21 Main Street, Suite 158
        Court Plaza South –West Wing
        Hackensack, New Jersey 07601
        Telephone:  201-287-2460
        Facsimile: 201-489-0495

        OF COUNSEL:
        Chidambaram S. Iyer
        (*pro hac vice* application forthcoming)
        **SUGHRUE MION, PLLC**
        2100 Pennsylvania Avenue, N.W.
        Washington, D.C. 20037
        Telephone: 202-775-7542
        Facsimile: 202-293-7860

        *Attorneys for Plaintiffs Arjuna Natural Ltd.
        and Arjuna Natural LLC, USA*

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

I certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: July 23, 2018

**RIVKIN RADLER LLP**

By:    <u>*s/ Gregory D. Miller*</u>
        Gregory D. Miller
        Nancy A. Del Pizzo
        21 Main Street, Suite 158
        Court Plaza South –West Wing
        Hackensack, New Jersey 07601
        Telephone:  201-287-2460
        Facsimile: 201-489-0495

        OF COUNSEL:
        Chidambaram S. Iyer
        (*pro hac vice* application forthcoming)
        **SUGHRUE MION, PLLC**
        2100 Pennsylvania Avenue, N.W.
        Washington, D.C. 20037
        Telephone: 202-775-7542
        Facsimile: 202-293-7860

        *Attorneys for Plaintiffs Arjuna Natural Ltd.*
        *and Arjuna Natural LLC, USA*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that Plaintiffs seek in excess of $150,000.00, exclusive of interest and costs, and seeks an injunction.

Dated: July 23, 2018

**RIVKIN RADLER LLP**

By:     *s/ Gregory D. Miller*
        Gregory D. Miller
        Nancy A. Del Pizzo
        21 Main Street, Suite 158
        Court Plaza South –West Wing
        Hackensack, New Jersey 07601
        Telephone:  201-287-2460
        Facsimile: 201-489-0495

        OF COUNSEL:
        Chidambaram S. Iyer
        (*pro hac vice* application forthcoming)
        **SUGHRUE MION, PLLC**
        2100 Pennsylvania Avenue, N.W.
        Washington, D.C. 20037
        Telephone: 202-775-7542
        Facsimile: 202-293-7860

        *Attorneys for Plaintiffs Arjuna Natural Ltd.*
        *and Arjuna Natural LLC, USA*

4065371